IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION


**DEONNE MAGGETTE, ET AL**                                                                     **PLAINTIFFS**

**V.**                                   **NO. 2:07CV181-M-A**
                                                    **LEAD CASE**

**BL DEVELOPMENT CORP. d/b/a GRAND
CASINO TUNICA; ET AL**                                     **DEFENDANTS**
                              **CONSOLIDATED WITH**

**McKINLEY JACOBS, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF FANNIE JACOBS, DECEASED; ET AL**                          **PLAINTIFFS**

**V.**                                                     **NO. 2:07CV182-M-A**

**BL DEVELOPMENT CORP. d/b/a
GRAND CASINO TUNICA; ET AL.**                                      **DEFENDANTS**


<u>**ORDER**</u>

      This cause comes before the court on its own motion, continuing the trial in the above-entitled action, which had been set to begin on October 13, 2010. The court is disappointed to learn that, in spite of (justifiably) excoriating defendant BL Development Corp. ("BL") for its bad faith discovery violations in this case, the plaintiffs themselves have failed to conduct basic discovery necessary to present their claims to a jury. In particular, plaintiffs failed to preserve the deposition testimony of approximately fifty treating physicians who are crucial witnesses regarding the issue of damages. In an unprecedented step, the plaintiffs sought leave from the Magistrate Judge to conduct these fifty depositions after the <u>pretrial conference</u> had already been held. It should go without saying that this request flies in the face of the most basic tenets of the

Federal Rules of Civil Procedure.

In a September 16, 2010 order denying plaintiffs' motion, the Magistrate Judge noted the procedural context in which the plaintiffs' request arose:

> The December 11, 2007 Case Management Order filed set the discovery deadline of July 12, 2009, and the trial on January 11, 2010. Docket 9 in 2:07cv181. At plaintiffs' request (Docket 161 in 2:07cv181) the court extended the discovery deadline by three months to September 21, 2009. Docket 178 in 2:07cv181. The trial was rescheduled twice, the first time to July 12, 2010 (Docket 333 in 2:07cv181) and finally to October 12, 2010 (Docket 362 in 2:07cv181).
>
> Plaintiffs knew at the time they filed suit on October 4, 2007, that an integral part of their trial preparation and presentation was to be testimony relating to their medical damages and that proof of those damages would involve testimony from physicians or other health care professionals who are not within the subpoena power of this court. Despite this knowledge, there is no indication in the record that plaintiffs ever tried to obtain and preserve their treating physicians' testimony for the trial here in Mississippi. At no point during this long, arduous litigation [549 docket entries to date] – until September 2, 2010 – have plaintiffs availed themselves of the procedural mechanisms which would have allowed them to depose their physicians for trial purposes, or for any purpose.

The Magistrate Judge observed in her order that, quite apart from the legal considerations counseling against granting the requested relief, actually conducting these depositions in the available time period would very likely be a physical impossibility:

> The plaintiffs represent that they need to take approximately FIFTY such depositions. . . . How they would accomplish the taking of fifty depositions within the next twenty-six days [counting weekends and holidays] is beyond the court's wildest imagination. The court is not, and frankly cannot be, convinced that it would even be possible from a logistical standpoint to schedule the depositions of fifty physicians in different states in the time between now and trial given the schedules of the physicians and attorneys involved in the litigation. Plaintiffs have not identified the specific physicians that they wish to depose, nor the locations of the physicians. The plaintiffs are asking for a blank check to take depositions at the last minute without even providing the court or the opposing parties with any details of the depositions they wish to take.

The Magistrate Judge further noted - correctly - that even attempting to conduct so many depositions in such a short period of time would severely prejudice defendant in its trial preparations.

The court's only disagreement with the Magistrate Judge's ruling relates to the issue of the proper remedy for the plaintiffs' discovery violation. The Magistrate Judge determined that the trial should go forward as scheduled in mid-October and that any treating physicians should be required to testify live. For its part, this court sees serious logistical difficulties with conducting a trial involving crucial trial witnesses who are beyond its subpoena power. While the court expects that some treating physicians would, in fact, voluntarily show up to offer testimony, it is likely that many others would either be unwilling or unable to do so. The trial in this matter was already scheduled to last six weeks, and it appears likely that requiring the live testimony of fifty out-of-state physicians would result in frequent delays as an already overburdened jury awaited - day after day - the arrival of various doctors. Given the inherent unpredictability of both the air transportation system and doctors' schedules, it seems inevitable that the disruption to the trial schedule would be great. In the court's view, whether a plaintiff is able to recover for the death of a close family member should not depend upon such an arbitrary factor as whether a particular physician has the time and/or inclination to appear at trial. Moreover, as a simple matter of judicial philosophy, this court does not favor entering into a trial when it is unclear whether crucial witnesses will be able to offer testimony.

Significantly, Fifth Circuit authority appears to contemplate the granting of a continuance as being the default remedy in this context. In *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996), the Fifth Circuit wrote that, in determining the proper remedy for discovery

violations of this nature, the court should determine, among other factors, the "prejudice to the opposing party of allowing the witnesses to testify" and "the possibility of curing such prejudice by granting a continuance." It strikes the court that the treating physicians are among the least controversial witnesses in this case, since no one disputes that the victims of the accident in this case suffered serious injuries and, in many cases, death. Particularly considering its own far more serious discovery violations, the court does not view defendant as being in a good position to argue that it would be prejudiced by permitting these very non-controversial witnesses to eventually offer testimony to a jury.

While the court concludes that a continuance would have been the proper remedy regardless, this issue is rendered even clearer by the fact that, since the Magistrate Judge's order, defendant has sought mandamus relief from the Fifth Circuit regarding this court's order granting dispositive sanctions. Defendant is free to seek whatever appellate relief it sees fit, but the fact remains that, by filing this petition, defendant has thrown what was already a hectic pretrial schedule into chaos. This court's standard practice is to stay cases which are before the Fifth Circuit on appeal, and the pendency of defendant's petition will cost both this court and the Magistrate Judge precious time in which to rule upon the numerous pre-trial motions which the parties have filed. By continuing this case, the Fifth Circuit will have the opportunity to carefully consider whatever arguments defendant raises on appeal, and, after the mandamus ruling, this court will have the opportunity to re-evaluate the case in light of that ruling.

Having determined that a continuance is in order, the court will grant this continuance on terms that the plaintiffs will, no doubt, find to be disagreeable. In the court's view, it is essential that plaintiffs be penalized in some manner for their neglect, rather than simply being given

4

additional time to conduct depositions that they should have conducted many months ago. This court has twice granted continuances without restriction, under the mistaken belief that it was dealing with parties (or at least plaintiffs) who were serious about litigating this case. This court has instead been confronted by a defendant who committed egregious discovery violations and by plaintiffs who neglected to preserve crucial trial testimony. Defendant's discovery violations were clearly far more severe than plaintiffs', and they do provide at least a partial explanation for plaintiffs' actions. At the same time, in a case where the plaintiffs have placed such emphasis on defendant's discovery violations, it was essential that they ensure that their own house was in order in this regard. They clearly failed to do so.

The court will therefore continue the trial in this case until a date to be determined later, but that trial will be held on very different terms than had originally been planned. When the trial does take place, it will be in the form of an initial "test case" involving the issue of liability, and, if necessary, the damages claims of the family of one decedent. All plaintiffs will be parties to the liability stage of the trial, thus ensuring that the results of that trial will have preclusive effect in subsequent proceedings. Any damages stage of trial will focus on the claims of the family of only one decedent, however, so as to provide the parties with an estimate of the value of the remaining claims. In deciding which family members will be allowed to present their claims first, the court will grant priority to plaintiffs who have shown the greatest diligence in preparing for trial.[1] Hopefully, this test case will assist the parties in reaching a settlement, but, if

---

[1] Plaintiffs recently represented to this court that even the six weeks which it had set aside for the trial in this matter would likely be insufficient. The court can not overstate the disruptive effect that such a lengthy trial has on its docket and its ability to schedule other matters. The court therefore reacted with exasperation when it learned that plaintiffs had not made basic preparations for a trial which had already been continued twice. It appears that neither side has

it does not do so, then the court will schedule further trials as needed.

The court will likely schedule the first trial for sometime this spring, and the subsequent trials will be scheduled as this court's calender permits. As with the first trial, the court will prioritize the plaintiffs in subsequent trials based upon the diligence, or lack thereof, which they have shown in this case. The court can not justify granting this case priority over cases involving litigants who actually follow its rules, and its ruling may therefore result in serious delays for certain plaintiffs. Clearly, however, these are delays which are partially of plaintiffs' own making. Having punished plaintiffs for their neglect, there is no good reason to prevent them from taking the depositions of treating physicians, and they will be afforded the opportunity to do so, at their own expense.[2]

In light of the foregoing, it is ordered that this case is continued until a date to be determined later. This case is hereby stayed until the completion of mandamus proceedings before the Fifth Circuit.

**SO ORDERED** this 23rd day of September, 2010.

                                              **/s/ MICHAEL P. MILLS**
                                              **CHIEF JUDGE**
                                              **UNITED STATES DISTRICT COURT**
                                              **NORTHERN DISTRICT OF MISSISSIPPI**

---

shown any real interest in litigating this case, which will no longer be allowed to serve as the tail wagging the dog of the court's entire docket.

[2]Due to its discovery violations, defendant has been paying much of plaintiffs' attorneys fees for over a year. In light of plaintiffs' own discovery violations, they will be paying their own attorneys' fees in all matters going forward.